# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *
CONCEPTION PLEVAK,            *
                             *     No. 15-1119V
               Petitioners,   *     Special Master Christian J. Moran
                             *
v.                           *
                             *     Filed: January 28, 2019
SECRETARY OF HEALTH          *
AND HUMAN SERVICES,          *     Interim attorneys' fees & costs, local
                             *     rates, Wisconsin rates, Davis County
               Respondent.    *     exception.
* * * * * * * * * * * * * * * * * * *
```

Jerome A. Konkel, Samster, Konkel & Safran, S.C., Milwaukee, WI for petitioner;
Lisa A. Watts, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION AWARDING
## ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

Ms. Plevak filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–10 through 34 (2012) on October 15, 2015. Ms. Plevak claims that an influenza vaccine she received on October 7, 2012, caused her to develop dysautonomia. Her counsel of record is Mr. Jerome Konkel.

On October 18, 2018, petitioner moved for interim fees, requesting $27,228.10 in fees and $4,954.05 in costs, for a total of $32,182.15. Petitioner is awarded $30,627.85.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

The requested fees included work performed and costs incurred through the date of the motion, October 18, 2018.  Petitioner's initial motion for fees and costs was not accompanied by any argument in support of the legal basis for her request.

Eleven days later, respondent filed his response to petitioner's motion.  In his response, respondent did not provide any objection to petitioner's request. Resp't's Resp. at 2.  Instead, respondent stated that he "defers to the Special Master to determine whether or not petitioner has met the legal standard for an interim costs award" and whether "the statutory requirements for an award of attorney's fees and costs have been met." Id.

Because of the absence of any argument in both the petitioner's and Secretary's briefs about 1) whether Ms. Plevak's claim was supported by good faith and reasonable basis; 2) whether Ms. Plevak is entitled to an interim award under the guidance provided by the Federal Circuit; and 3) whether Mr. Konkel's requested rate was reasonable, the parties were ordered to submit supplemental briefs addressing these three issues.  Order, issued Nov. 2, 2018.

A renewed motion and response were filed on November 20, 2018, and December 7, 2018, respectively.  This matter is now ripe for adjudication.

\*       \*       \*

The parties' briefs raise a series of sequential questions, each of which requires an affirmative answer to the previous question.  First, whether Ms. Plevak is eligible under the Vaccine Act to receive an award of attorneys' fees and costs? Second, whether, as a matter of discretion, Ms. Plevak should be awarded her attorneys' fees and costs on an interim basis?  Third, what is a reasonable amount of attorneys' fees and costs?  These questions are addressed below.

### 1. Eligibility for An Award of Attorneys' Fees and Costs

As an initial matter, interim fee awards are available in Vaccine Act cases. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008). Since Ms. Plevak has not received compensation from the Program, she may be awarded "compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1).  As the Federal Circuit has

stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).

"Good faith" is a subjective standard. Id.; Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at * 5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The Secretary has not challenged petitioner's good faith here, and there is little doubt that petitioner brought the claim with an honest belief that a vaccine injury occurred.

In contrast to good faith, reasonable basis is purely an objective evaluation of the weight of the evidence. Simmons, 875 F.3d at 636. Because evidence is "objective," the Federal Circuit's description is consistent with viewing the reasonable basis standard as creating a test that petitioners meet by submitting evidence. See Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660 at *12-13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (explaining that reasonable basis is met with evidence), mot. for rev. denied, 116 Fed. Cl. 276 (2014).

In his response to petitioner's renewed motion for attorneys' fees and costs, the Secretary clarified his initial ambivalence on the question of reasonable basis, noting that "it appears that preponderant evidence supports a conclusion that petitioner has established a reasonable basis for the claim." Resp't's Resp., filed Dec. 7, 2018, at 3. The undersigned has reviewed the record and concurs with the Secretary. The combination of the medical records that corroborate many of Ms. Plevak's alleged facts, the apparent temporal proximity between the vaccinations and the onset of her injuries, and the two expert reports that are, facially, credible, provides Ms. Plevak a reasonable basis for her claim. See Chuisano v. United States, 116 Fed. Cl. 276, 287 (2014) (upholding the special master's finding that

evidence of a temporal relationship alone *without other evidence, such as an expert opinion,* is not sufficient to establish reasonable basis).[2]

## 2. Appropriateness of an Interim Award

Interim awards should not be awarded as a matter of right.  <u>Avera</u>, 515 F.3d at 1352 (Fed. Cir. 2008).  Instead, petitioners must demonstrate "undue hardship." <u>Id.</u>  The Federal Circuit noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained."  <u>Id.</u> The Circuit has also considered whether petitioners faced "only a short delay in the award" before a motion for final fees could be entertained.  <u>Id.</u>

The Federal Circuit has not attempted to specifically define what constitutes "undue hardship" or a "protracted proceeding."  In the undersigned's practice, interim fees may be appropriate when the amount of attorneys' fees exceeds $30,000 and the case has been pending for more than 18 months.  Ms. Plevak clears both hurdles.  It is also notable that Ms. Plevak is not likely to have a hearing on entitlement held prior to 2021.  Accordingly, an interim fee award for Ms. Plevak is appropriate.

## 3. Reasonableness of the Requested Amount

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs.  42 U.S.C. § 300aa-15(e)(1).  Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach.  <u>Avera</u>, 515 F.3d at 1347-48 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)); <u>Saxton ex rel. v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521 (Fed. Cir. 1993).

---

[2] The undersigned's conclusion that Ms. Plevak's petition currently has a reasonable basis does not foreclose a conclusion later that Ms. Plevak's petition has lost its reasonable basis. <u>See</u> <u>Perreira</u>, 33 F.3d at 1377.

4

A.    <u>Reasonable Hourly Rate</u>

A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is significantly lower than the forum rate.  <u>Avera</u>, 515 F.3d at 1349.  If these two requirements are met, the <u>Davis County</u> exception applies, and petitioner's counsel is paid according to the local rate to avoid a "windfall."  <u>Id.</u>; see <u>Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency</u>, 169 F.3d 755, 757-60 (D.C. Cir. 1999).

Here, all the work was performed outside the forum, in Milwaukee, Wisconsin.  Accordingly, it is necessary to examine the local rate to determine if it is significantly lower than the forum rate.  In his initial request for fees and costs, Mr. Konkel did not submit any evidence regarding the appropriate local rate for an attorney of his ability and experience beside a statement in an affidavit that his "current hourly rate for vaccine injury litigation is $368 per hour."  Pet'r's Mot., filed Oct. 18, 2018, Aff. of Jerome Konkel ¶ 1.

Mr. Konkel was provided an opportunity to address the deficit in his original motion.  The order issued on November 5, 2018, noted that petitioner's initial motion contained no argument in support of the proposed hourly rate.  Petitioner was instructed to present an argument in support of why the requested rate was reasonable and to include in this argument citations to cases that comment, favorably or unfavorably, on Mr. Konkel's requested rate.  Petitioner was advised that decisions that did not explicitly analyze Mr. Konkel's rates would not be given substantial weight.

Petitioner filed a supplemental motion in support of her request for fees.  In it, petitioner stated that Mr. Konkel has practiced law for over 35 years and has practiced vaccine injury law for the last 17 of those.  Pet'r's Br., filed Nov. 20, 2018, at 5-6.  Petitioner's argument provided a single citation in support of her claim that $368.00 per hour was a reasonable rate: <u>Lauer v. Sec'y of Health & Human Servs.</u> No. 17-0082V, 2018 WL 5262740, at *1 (Fed. Cl. Spec. Mstr. Aug. 15, 2018).  Petitioner also noted that reviewing special masters "approved the same rates without comment or objection" in fourteen other petitions.  Pet'r's Br., filed Nov. 20, 2018, at 5-6.

5

Special masters have, indeed, awarded Mr. Konkel his requested hourly rates, or rates similar to the requested rates,[3] on a number of instances.  However, Lauer and other cases that have approved his requested rates do not actually analyze the reasonableness of the awarded rates.

Accordingly, the petitioner is again left with very little substantive evidence as to whether the requested rate for Mr. Konkel is reasonable.  Ideally, Mr. Konkel would have supported his request with evidence demonstrating that $368.00 per hour represents his market rate in Wisconsin.  As the Federal Circuit has noted in the context of Vaccine Act litigation, "a reasonable hourly rate is the prevailing market rate, defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Avera, 515 F.3d at 1348 (citing Blum, 465 U.S. at 896 (quotations omitted)).  Mr. Konkel could have potentially provided information about his compensation when representing paying clients.  This information could have helped establish his market rate.  See Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993) ("When the lawyers sell their time in the market, the market provides the starting point: the lawyer's hourly rate").  Even then, "something more than an attorney's own affidavit is required to establish the prevailing market rate for fees."  Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 938 (Fed. Cir. 2000).

Nevertheless, even after being ordered to provide support for his requested rate, Mr. Konkel did not provide any evidence.  In other contexts where courts are unable to obtain evidence of an attorney's true billing rate, they have relied on other evidence that may be available.  See, e.g., People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996) ("If the court is unable to determine the attorney's true billing rate . . . then the court should look to the next best evidence-the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation'") (citing Blum, 465 U.S. at 886, 892, 895).  This approach is reasonable here as well.

---

[3] The rates Mr. Konkel proposes here are sometimes higher than those previously awarded.  For example, here Mr. Konkel requests $300.00 per hour for 2014 and $312.00 per hour for 2015.  However, in Kaiser v. Sec'y of Health & Human Servs., the special master noted that Mr. Konkel's previously awarded rates for those same years was $285.00 and $295.00 per hour, respectively. No. 15-1261V, 2018 WL 2224962, at *1 (Fed. Cl. Spec. Mstr. Feb. 22, 2018).

Accordingly, fee-shifting cases from district courts in Mr. Konkel's home district of the Eastern District of Wisconsin inform an evaluation of a reasonable hourly rate.  Based upon this review, it appears that $200.00-$400.00 per hour is a reasonable market rate for an attorney prosecuting cases under fee-shifting statutes such as the Fair Debt Collection Practices Act (FDCPA) and Truth in Lending Act (TILA).  See Heling v. Creditors Collection Serv. Inc., No. 15-CV-1274-JPS, 2017 WL 2539785, at *4 (E.D. Wis. June 12, 2017) (noting that that same court had previously awarded $350-375 to one attorney and $250.00-$275.00 to another in FDCPA cases before ultimately granting $400.00 and $300.00, respectively); Gagliano v. State Collection Serv., No. 14-CV-1512, 2016 WL 2853538, at *2 (E.D. Wis. May 13, 2016) (awarding $300.00 to one attorney and $250 to another in a FDCPA case); Crafton v. Law Firm of Jonathan B. Levine, No. 12-CV-602, 2014 WL 907423, at *2 (E.D. Wis. Mar. 7, 2014) (awarding $335 to the senior attorney on the case after an extensive review of comparable rates that have been awarded in similar FDCPA cases); Andrews v. Chevy Chase Bank FSB, 706 F. Supp. 2d 916, 921 (E.D. Wis. 2010) (awarding $350 per hour to an experienced attorney in a TILA case); Faraca v. Fleet 1 Logistics, LLC, 693 F. Supp. 2d 891, 896 (E.D. Wis. 2010) (awarding $250.00 per hour to an attorney with 30 years of experience in a TILA case and $200.00 per hour to junior attorneys).[4]

Identifying where Mr. Konkel falls in this range of rates is, perhaps, the most difficult aspect of the analysis.  The special master in McCulloch identified several useful factors, including experience in the Vaccine Program, overall legal

---

[4] Though not employed in the above analysis, a survey of 9,000 Wisconsin lawyers reported that the average Wisconsin attorney that was an equity party in his or her firm, as Mr. Konkel is, earned an hourly rate of $295.00 per hour in 2017.  See Joe Forward, *The Economics of Law Practice*, 91 Wisconsin Lawyer 2 (2018) (last visited Jan. 14, 2019), https://www.wisbar.org/NewsPublications/WisconsinLawyer/Pages/Article.aspx?Volume=91&Issue=2&ArticleID=26151.

Although FDCPA cases are not cases in the Vaccine Program, FDCPA cases present a useful metric for appropriate compensation in Vaccine Program cases.  See, e.g., Dezern v. Sec'y of Health & Human Servs., No. 13-643V, 2016 WL 6678496, at *14 (Fed. Cl. Spec. Mstr. Oct. 14, 2016).

experience, the quality of work performed, and the reputation in the legal community.  2015 WL 5634323, at *17.

In this aspect of the analysis Mr. Konkel would have been especially well-served to make his case instead of having the undersigned perform the work for him.  To his credit, Mr. Konkel has over 30 years of experience, including 17 years in the Vaccine Program.  Mr. Konkel provided competent representation and did so efficiently.  However, the undersigned is not persuaded that Mr. Konkel provided an above-average level of advocacy to Ms. Plevak.  Accordingly, if Mr. Konkel were to be paid the prevailing local rate for Vaccine Act work in 2017, the undersigned finds a rate of $315.00 per hour to be appropriate.

Having established $315.00 per hour as constituting Mr. Konkel's reasonable local rate, the undersigned next determines the forum rate for Mr. Konkel.  The Office of Special Masters has adopted the framework established in McCulloch for determining the appropriate forum rate.  Using this framework, for an individual of Mr. Konkel's experience, the appropriate forum rate for 2017 was $394.00-$440.00 per hour.  Based on Mr. Konkel's experience in the Vaccine Program specifically and the quality of the performed for Ms. Plevak, the undersigned finds a forum rate of $415.00 appropriate for Mr. Konkel.

The final step is determining whether the difference between the local rate and the forum rate is very significant.  Here, the forum rate is 32% higher than Mr. Konkel's reasonable local rate.  This difference is so significant that it would cause Mr. Konkel to experience an unearned "windfall" if he were to be paid that rate.  Accordingly, the Davis County exception applies.  See Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1355-6 (Fed. Cir. 2011) (noting that there was no bright-line threshold for what constitutes a significant difference, but affirming a special master's conclusion that a 59% different was significant); Garrison v. Sec'y of Health & Human Servs., 128 Fed. Cl. 99, 108 (2016) (affirming the special master's finding that the Davis County exception did not apply where there was an 18.5% difference between the D.C. and local rate; De Souza v. Sec'y of Health & Human Servs., No. 17-100V, 2018 WL 6920676, at *6 (Fed. Cl. Dec. 14, 2018) (finding that the special master abused his discretion when concluding that a 10-15% difference was significant).

Once $315.00 per hour is established as a reasonable hourly rate for Mr. Konkel's work in the Vaccine Program for 2017, Mr. Konkel's rates for 2014-16,

and 2018 must be calculated. The Office of Special Masters has relied on the PPI-OL to adjust rates to reflect year-to-year changes in purchasing power for attorneys. <u>See, e.g.</u>, <u>Pember v. Sec'y of Health & Human Servs.</u>, No. 15-1005V, 2018 WL 3989514, at n. 2 (Fed. Cl. Spec. Mstr. June 28, 2018). After applying the PPI-OL, Mr. Konkel's rates are $285.00 for 2014; $295.00 for 2015; $305.00 for 2016; $315.00 for 2017; and, $325.00 for 2018. Mr. Konkel's requested paralegal rate is reasonable. The adjustment for Mr. Konkel's hourly rate decreases the award for attorneys' fees and costs by $1,554.30.

B.   <u>Reasonable Number of Hours</u>

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. <u>See Saxton v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary did not challenge any of the requested hours as unreasonable.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. <u>See McIntosh v. Sec'y of Health & Human Servs.</u>, 139 Fed. Cl. 238 (2018).

The undersigned is impressed by Mr. Konkel's billing entries. They are sufficiently detailed to conclude that the time Mr. Konkel and his paralegal spent working on Ms. Plevak's case was reasonable.

C.   <u>Costs</u>

Ms. Plevak requests $4,954.05 in costs. These include costs associated with retrieving medical records, the court filing fee, shipping, and expert fees for Dr. David Axelrod. The undersigned has reviewed the associated invoices and finds all the costs reasonable.

\*       \*       \*

Accordingly, petitioner is awarded:

**A lump sum of $30,627.85 in the form of a check made payable to petitioner and petitioner's attorney, Jerome Konkel.**

This amount represents reimbursement attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e). In the absence of a motion for

review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master
