# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
CONCEPTION PLEVAK,            *
                              *    No. 15-1119V
            Petitioner,       *    Special Master Christian J. Moran
                              *
v.                            *
                              *    Filed: February 28, 2019
SECRETARY OF HEALTH           *
AND HUMAN SERVICES,           *
                              *
            Respondent.       *
* * * * * * * * * * * * * * * * * * * *

<u>Jerome A. Konkel</u>, Samster, Konkel & Safran, S.C., Milwaukee, WI for petitioner;
<u>Lisa A. Watts</u>, United States Dep't of Justice, Washington, DC, for respondent.

### DECISION DENYING COMPENSATION[1]

     Ms. Conception Plevak filed a claim for compensation under the National Childhood Vaccine Injury Act of 1986 on October 5, 2015. In her petition, she claimed that influenza vaccinations on October 27, 2012, and October 30, 2013, caused her to develop dysautonomia. Petition at ¶ 16. Since the beginning of her case, Ms. Plevak has been represented by Mr. Jerome Konkel. In the years since the petition was filed, Ms. Plevak worked to develop additional evidence in support of her claim. However, these efforts were largely unsuccessful. On February 14, 2019, Ms. Plevak moved to dismiss her petition on the grounds that "an investigation of the facts and science supporting her case demonstrated to petitioner that she will be unable to prove that she is entitled to compensation."

---

[1] Because this ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the ruling.

Because the undersigned agrees with Ms. Plevak's assessment that she cannot, based on the facts of her case, prevail on her claim of a vaccine injury, her motion is GRANTED and her claim is DISMISSED for insufficient proof pursuant to Vaccine Rule 8(d).

**Factual History**

Respondent's Rule 4(c) report, filed April 18, 2016, aptly summarizes the uncontroverted facts of this case. Ms. Plevak was 50 years old at the time she received a flu vaccination on October 7, 2012. Exhibit 2 at 2. Three weeks after the October 7 vaccination, Ms. Plevak presented to her primary care physician with complaints of headache for the prior two weeks. Exhibit 3 at 2-3. Ms. Plevak also self-reported high blood pressure readings. However, the examination did not reveal any abnormalities, including a finding of normal blood pressure. Id.

Ms. Plevak visited the emergency department later that same day, complaining of a worsening headache. Exhibit 5 at 12. The only abnormal finding upon examination, which included a head CT scan, was high blood pressure. Id. at 13. Ms. Plevak was discharged shortly after she arrived. Id. at 16. An email from her treating physician attributed her condition to elevated blood pressure, which needed to be controlled and closely monitored. Exhibit 3 at 6.

Additional tests in the following weeks returned normal results. Exhibit 4 at 43, 45-46. She was ultimately prescribed medication for high blood pressure and was not seen again for months. Id.

At her next visit with a physician, which was a non-urgent wellness examination, Ms. Plevak reported that she had been suffering from fatigue, moodiness, and sadness over the course of the previous several weeks. Exhibit 4 at 24. Her tests results were normal aside from a finding of high cholesterol and she was prescribed an anti-depressant. Id. at 22-24. The anti-depressant had positive results. Id. at 41.

Ms. Plevak was administered another annual flu shot on October 30, 2013. Exhibit 2 at 1. Two weeks after the vaccination, she was admitted to the hospital for high blood pressure and headaches. Exhibit 7 at 2-151. It was noted that she was not taking blood pressure medication at that time. Id. at 13. Multiple tests again returned normal results and she was discharged with prescriptions for her high blood pressure and headaches. Id. at 18-20.

Ms. Plevak returned to the emergency department two months later, on December 30, 2013. At that visit, she presented with fluctuating blood pressure, headache, neck pain, swelling, and dizziness. Exhibit 9 at 2-37. Again, Ms. Plevak had an unremarkable examination aside from high blood pressure and was released shortly after she arrived. Id. at 3.

Ms. Plevak had multiple visits with Dr. Rose Dotson in 2014. Exhibit 10 at 2-59. Dr. Dotson diagnosed Ms. Plevak with, among other things, mild dysautonomia that did not appear congruent with Ms. Plevak's symptoms. Id. Dr. Dotson also appeared to suggest that the dysautonomia she did experience may be attributable to her medication. Id. Dr. Dotson suggested that Ms. Plevak continue with her current medication regimen and seek additional treatment for her hypertension. Id. at 58.

**Procedural History**

Ms. Plevak filed her petition for compensation on October 5, 2015. On March 3, 2016, petitioner filed a statement confirming that the documentary record was sufficiently complete for the Secretary's review of the case. The Secretary then provided his position, stating that Ms. Plevak was not entitled to compensation under the Act. Resp't's Rep., filed Apr. 18, 2016, at 6-8. In his report, the Secretary noted that Ms. Plevak's treating physicians associated any dysautonomia symptoms she did have to causes other than the vaccination and that there was no medical opinion in the record that associated her dysautonomia to vaccination. Id. at 7.

During the Rule 5 status conference, petitioner stated that she had retained an expert neurologist and would be filing an expert report associating her condition to the vaccinations. Order, issued Apr. 27, 2016. Multiple enlargements of time were requested and granted for the filing of the expert report and petitioner ultimately filed the report, by Dr. David Axelrod, on October 25, 2016. See exhibit 16. Dr. Axelrod's report started off by stating that he was not an expert in dysautonomia and that he was assuming that Ms. Plevak suffered from dysautonomia and that the dysautonomia started after her the first vaccination and then relapsed shortly after the second. Id. at 1. Dr. Axelrod then continued to opine that studies had associated dysautonomia to vaccination and that, as a result, he could conclude that, more likely than not, Ms. Plevak's dysautonomia was the result of her vaccinations.

3

The Secretary filed a rebuttal report from Dr. Daniel Feinberg, also after multiple enlargements of time, on March 10, 2017.  See exhibit A.  In his report, Dr. Feinberg opined that Dr. Axelrod's report was incorrect in its conclusion since there was no scientific basis for the premise that dysautonomia was causally related to influenza vaccination.  Id. at 4.  Furthermore, Dr. Feinberg noted that Dr. Dotson's assessment of Ms. Plevak was not consistent with a conclusion that she suffered from anything more than hypertension and thus, Dr. Axelrod's assumption that she suffered from dysautonomia was in error.  Id.

Because of the latent ambiguity in Dr. Dotson's records and the importance these records appeared to play in both experts' reports, the undersigned encouraged Ms. Plevak to contact Dr. Dotson to seek clarification regarding her evaluation of Ms. Plevak's putative dysautonomia.  Order, issued June 15, 2017.  In status reports filed on August 14, 2017, and August 28, 2017, petitioner reported having difficulty obtaining cooperation from Dr. Dotson.  Petitioner stated that she considered issuing a subpoena for Dr. Dotson's testimony, but noted that Wisconsin law created privileges that treating physicians could use to avoid compelled testimony.

In a status conference held on September 7, 2017, petitioner reported that, considering the difficulty she had obtaining cooperation from Dr. Dotson, she had begun the process of obtaining the cooperation of a consulting neurologist that could provide an expert report on Ms. Plevak's diagnosis.  Order, issued Sept. 7, 2017.

In a status report filed on October 10, 2017, petitioner stated that she had retained Dr. Paul Nausieda to examine Ms. Plevak and provide an expert opinion on her condition.  However, during a status conference held on January 4, 2018, Ms. Plevak reported that she decided to not proceed with Dr. Nausieda for financial reasons and that she had consulted with another expert witness that suspected Ms. Plevak suffered from antiphospholipid syndrome.  Petitioner stated that 12 weeks was needed to perform additional testing to confirm the diagnosis.

Three months later, petitioner filed a status report stating that Ms. Plevak's new neurologist, Dr. Chelimsky, now had a working diagnosis of vagus nerve dysautonomia.  Pet'r's Rep., filed Apr. 1, 2018.  Ms. Plevak's status report further communicated that her attorney had made several attempts to contact Dr. Chelimsky to obtain his opinion on whether Ms. Plevak suffered from dysautonomia.  However, these efforts had so far been unsuccessful.  Ms. Plevak requested an additional 30-

60 days to obtain the report informally before considering whether it would be appropriate to compel his testimony by subpoena.

Throughout the spring and fall of 2018, Ms. Plevak continued to report that she had no success getting Dr. Chelimsky to cooperate with her attorney. See generally ECF nos. 54-58. Based on the representations made by Ms. Plevak's attorney, his efforts to contact Dr. Chelimsky and his reticence to subpoena his testimony appeared reasonable. Ultimately, on October 18, 2018, Ms. Plevak moved for an award of interim fees and costs and on the next day Mr. Konkel moved to withdraw as counsel, citing "a disagreement as to the further handling of the course of the pending petition."  Pet'r's Mot., filed Oct. 19, 2018, at 1.  The undersigned ordered additional briefing on the issue of fees and costs and after supplemental briefs were issued, awarded petitioner the vast majority of her requested total. Decision, issued Jan. 28, 2019, 2019 WL ____.

However, the undersigned held concerns about Mr. Konkel's withdrawal from the case given its procedural posture and the appearance that Ms. Plevak was interested in continuing the petition.  Accordingly, a status conference was held on February 14, 2019, to discuss Mr. Konkel's withdrawal and the next steps for Ms. Plevak.  During the status conference, petitioner communicated that she had finally obtained some information from Dr. Chelimsky, but that it was unhelpful to her case. Furthermore, petitioner stated that she had sought out a second opinion from another attorney who agreed with Mr. Konkel's assessment that a dismissal was appropriate. Based on these representations, Ms. Plevak decided to no longer pursue her case. Shortly after the status conference, she moved for a decision dismissing the petition.

**Analysis**

Petitioners are required to establish their cases by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

The facts of Ms. Plevak's case do not allow the undersigned to find that the evidence preponderates in favor of Ms. Plevak's claim that her vaccinations caused her to develop dysautonomia or any related conditions.  Ms. Plevak's own treating physicians expressed substantial uncertainty about the nature of Ms. Plevak's

5

disorder, with most appearing to ascribe it to hypertension, not an underlying neurological disorder.  Furthermore, Ms. Plevak has failed to provide persuasive evidence supporting her claim that flu vaccinations *can cause* dysautonomia and, more importantly, that it *did cause* her putative dysautonomia.

## Conclusion

While the undersigned held concerns that Ms. Plevak may have left stones unturned through the years of her petition due to the non-cooperation by her treating physicians, Ms. Plevak's most recent representations indicate that those physicians, or at least some of them, were finally cooperative.  Unfortunately, they were unable to provide answers that advanced Ms. Plevak's claim of a vaccine injury.  Furthermore, assessments by independent attorneys indicated to Ms. Plevak that Mr. Konkel had been diligent and competent in his efforts to prosecute her case.

For the aforementioned reasons, the undersigned finds that Ms. Plevak has been provided a full and fair opportunity to present her case of a vaccine injury. The evidence entered by Ms. Plevak is not sufficient to meet her statutory burden for proving a compensable vaccine injury.  Accordingly, Ms. Plevak's petition is DISMISSED pursuant to Vaccine Rule 8(d).

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master